IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MUREX N.A., LTD., §<br>     Plaintiff, §<br> §<br>v. §<br> §<br>DELTA COMMODITIES GMBH, §<br>     Defendant. § | | CIVIL ACTION NO. H-12-3477 |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment [Doc. # 10] filed by Defendant Delta Commodities GmbH ("Delta"), to which Plaintiff Murex N.A., Ltd. ("Murex") filed a Response [Doc. # 12], and Delta filed a Reply [Doc. # 18].[1]  The Court has carefully reviewed the full record and applicable legal authorities.  Based on this review, Defendant's Motion is **denied**.

## I.   BACKGROUND

Murex and Delta are both sellers of ethanol.  Murex entered into a contract with Delta to purchase a shipment of ethanol which Murex planned to resell.  The ethanol was to be shipped aboard the M/T SHAMROCK JUPITER from Brazil, and delivered to Murex between August 15 and August 31, 2012.  Murex alleges that the vessel

---

[1] Also pending is Murex's Motion for Leave to File a Sur-Reply [Doc. # 21], which is denied.

made additional stops during the voyage, resulting in delivery of the ethanol to Murex after August 31, 2012.

Murex filed this lawsuit against Delta on November 28, 2012. Murex alleges that the late delivery caused it to lose $285,295.36 because the price for ethanol in August 2012 was $0.2168 per gallon higher than the price in September 2012.

Defendant moved for summary judgment, arguing that Murex's claims and damages are precluded by the terms of the parties' contract. The Motion has been fully briefed and is now ripe for decision.

## II.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325; *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted). The Court construes all facts and considers all evidence in the light most favorable to the nonmoving party. *Nat'l Union*, 532 F.3d at 401.

### III.  ANALYSIS

#### A.  Contract Interpretation

"Contract interpretation, including the question of whether the contract is ambiguous, is a legal question. *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 428 (5th Cir. 2003). "The court's primary concern is to give effect to the written expression of the parties' intent." *Id.* The Court should consider "all parts of the contract together to ascertain the agreement of the parties, ensuring that each provision of the contract is given effect and none are rendered meaningless." *Id.*

"Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered into." *Id.* at 431.  "[A] contract is ambiguous only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of the two meanings is the proper meaning . . . ." *Id.* (quoting *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980)).

"Ambiguous contracts may require consideration of evidence beyond the four corners of the contract in order to determine the parties' intent, thus involving questions of fact . . . ." *Burns v. Louisiana Land & Exploration Co.*, 870 F.2d 1016, 1018 (5th Cir. 1989).  A court, after determining that the language of a contract is ambiguous, is authorized "to consider the parties' interpretations and admit extrinsic evidence to determine its true meaning." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).

### B. <u>Damages</u>

Delta argues that Murex's claimed damages are not recoverable under the terms of the parties' contract.  The parties' Purchase and Sale Agreement ("Agreement") states:  "Neither PARTY shall be liable to the other PARTY for any loss of production, profits or use or any other indirect or consequential damage, irrespective

of cause or negligence (including gross negligence) on any party." *See* Agreement, Exh. 1(A) to Motion, ¶ 17.2. Delta argues that Murex's claim for lost profits is barred by this paragraph of the Agreement.

Murex admits that its damages are lost profits, but argues that the paragraph precludes damages only for lost profits that are "indirect" but not for lost profits that are "direct." Under Texas law, lost profits may be either direct or indirect. *See, e.g., Cherokee Cnty. Cogeneration Partners, L.P. v. Dynegy Marketing and Trade*, 305 S.W.3d 309, 314 (Tex. App. – Houston [14th Dist.] 2009, no pet.). Direct damages "flow naturally and necessarily from a defendant's wrongful act" and are intended to "compensate the plaintiff for a loss that is conclusively presumed to have been foreseen by the defendant as a usual and necessary consequence of its wrongdoing." *Id.* Indirect, or consequential damages, "result naturally, but not necessarily, from the defendant's wrongful acts." *Id.* (quoting *Stuart v. Bayless,* 964 S.W.2d 920, 921 (Tex. 1998)). Lost profits may be either direct or indirect damages, depending on their nature and what was contemplated by the parties. *Id.* (citations omitted). Profits that are lost on the contract itself, "such as the amount a party would have received on the contract minus its saved expenses," are clearly direct damages. *Id.* Profits that are "lost on other contracts or relationships resulting from the breach may be classified as 'indirect' or consequential damages." *Id.* "Stated differently, if a party's

expectation of profit is incidental to the performance of the contract, the loss of that expectancy is consequential.'" *Id.* (internal quotations and citations omitted).

In *Cherokee County*, a Houston, Texas court of appeals held that the lost profits were direct damages because they were profits that were built into the parties' agreement itself by obligating the plaintiff to purchase gas at a specific, agreed-upon price regardless of the current market price and providing expressly that the plaintiff could resell the gas to a third party. *Id.* at 315. Similarly, in the case at bar, the parties understood that Murex would purchase the ethanol at a specified price and resell it to a third party. Murex submitted the Affidavit of Phil Dalton, its Director of New Product Development, who stated under oath that he discussed with Delta's representatives Murex's intention to resell the ethanol "immediately upon delivery."[2] *See* Affidavit of Phil Dalton, Exh. 2 to Response, ¶ 3. Delta has submitted no evidence to the contrary. The undisputed evidence in this record shows that the parties' expectation was that Murex would immediately resell the ethanol which, based on the holding in the *Cherokee County* case, could support a finding by the fact-finder that Murex's lost profits were "direct."

---

[2] Extrinsic evidence of surrounding circumstances may be considered to "inform, rather than vary from or contradict the contract text." *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.,* 352 S.W.3d 462, 469 (Tex. 2011).

Paragraph ¶ 17.2 of the Agreement precludes liability for "any loss of . . . profits or any *other* indirect . . . damage." *Id.* (emphasis added). The paragraph must be construed to preclude only lost profits that are indirect damage; otherwise, the word "other" is superfluous and has no meaning. Consequently, the parties' Agreement precludes recovery of indirect lost profits, but not direct lost profits. Murex has presented evidence that raises a genuine issue of material fact regarding whether its lost profits in this case were direct damages and, therefore, recoverable under the Agreement. As a result, the Court denies Defendant's Motion for Summary Judgment that Murex's claimed damages for lost profits is precluded by the Agreement.

Delta argues also that the damages are not recoverable because they were unforeseeable. As discussed above, Murex has presented evidence that the parties contemplated that Murex would resell the ethanol immediately upon delivery. This evidence precludes summary judgment for Delta that the lost profits caused by the allegedly late delivery were unforeseeable.

### C. <u>Delivery</u>

Delta argues that "delivery" under the contract occurred when the ethanol was loaded on the vessel in Brazil on August 15, 2012 and, therefore, delivery was timely. Delta concedes that there is "some ambiguity" in the terms of the Agreement as they relate to "delivery." *See* Motion, p. 11. The Court agrees. The Agreement states that

"[Delta] shall sell and deliver to [Murex] – CIF (Cost, Insurance and Freight) from Port of Vitoria, Brazil 'LOAD PORT' to Texas City - Oil tanking terminal, USA 'DISCHARGE PORT.'" *See* Agreement, ¶ 1.1. Paragraph 8.1 of the Agreement contains the same language regarding delivery "in one safe berth . . . from Load Port of Vitoria, Brazil to Discharge in Oil Tanking City Terminal." *See id.*, ¶ 8.1. On the other hand, paragraph 10.1 of the Agreement provides in pertinent part that the "Delivery shall be . . . at the discharge at Oil Tanking Texas City Terminal." *See id.*, ¶ 10.1. Paragraph 12.2 provides, however, that the risk of loss "shall be transferred from [Delta] to [Murex] as soon as the PRODUCT passes the ship's manifold at the LOADING PORT." *Id.*, ¶ 12.2.

The parties' extrinsic evidence is equally conflicting and raises a fact dispute regarding the parties' intent. Delta submitted the Declaration of Paulo Carrara, its Manager for Commodities, who stated that Delta "made legal delivery, as per CIF terms, when the cargo was loaded on the ship and the title passed to Murex." *See* Carrara Declaration, Exh. to Reply, ¶ VII. In Murex's Affidavit of Phil Dalton, he states specifically that he negotiated delivery in Texas City, Texas, which would not be a normal part of CIF terms. *See* Dalton Aff., ¶ 2.

The terms of the Agreement are ambiguous. The extrinsic evidence raises a fact dispute regarding the parties' intent as to whether legal delivery for purposes of the

requirement that delivery occur between August 15 and August 31, 2012, was at the time of loading the cargo in Brazil or only upon final delivery in Texas. As a result, Defendant is not entitled to summary judgment on this issue.

## IV. <u>CONCLUSION AND ORDER</u>

The damages claimed by Murex for lost profits are "direct" damages not precluded by the parties' Agreement, and Murex has presented evidence that the lost profits were foreseeable. There exists a fact dispute regarding the parties' intent as to when and where "delivery" would occur. As a result, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 10] is **DENIED**. It is further

**ORDERED** that Plaintiff's Motion for Leave to File a Sur-Reply [Doc. # 21] is **DENIED**.

SIGNED at Houston, Texas this **3rd** day of **June, 2013.**

_____
Nancy F. Atlas
United States District Judge